**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN JACK and** | : | |
|    **TRI-STATE DISPOSAL, LLC,** | : | |
| | : | |
|      **Plaintiffs,** | : | **Case No. 2:16-cv-633** |
| | : | |
|      **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **DEAN GROSE and** | : | **Magistrate Judge Jolson** |
|    **SOUTH PARK VENTURES, LLC,** | : | |
| | : | |
|      **Defendants.** | : | |

**OPINION & ORDER**

     This matter comes before the Court on a motion to dismiss from Defendants Dean Grose ("Grose") and South Park Ventures, LLC ("SPV"). (*See* Doc. 6 and Doc. 8).[1]  Grose and SPV argue that Plaintiffs John Jack ("Jack") and Tri-State Disposal, LLC ("Tri-State") fail to state a claim for relief on Count One (breach of contract), Count Two (seeking injunctive relief), Count Three (seeking declaratory relief), and Count Four (breach of fiduciary duty), and that the plaintiffs lack standing to bring several of those claims.  Grose and SPV therefore seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

     The Court agrees that Counts One and Two must be dismissed as to Grose since he was not a party to the contract which forms the basis for relief.  The Court declines to exercise its jurisdiction under the Declaratory Judgment Act as to Count Three because it is duplicative of Counts One and Two.  Count Four, however, may proceed as pleaded, as may Count Five— which the defendants have not sought to dismiss.  Accordingly, and for the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** the defendants' motion(s) to dismiss.

---

[1] For some reason, SPV and Grose filed duplicate motions to dismiss at Doc. 6 and Doc. 8 and duplicate briefs in support at Doc. 7 and Doc. 9.  One pair of filings would have sufficed.

# I.  BACKGROUND

The recent natural gas rush along the Marcellus and Utica Shales has led to some hastily arranged corporate marriages.  This case centers on one of those marriages, and involves a limited liability company ("LLC") caught in the crossfire and gridlock of its two feuding members and their respective managers.  Unable to resolve their differences in the fracking fields, those members and managers now turn to the federal court for answers.

## A.  Factual Background[2]

In the mid-2000s, geologists discovered one of the world's largest natural gas fields, now known as the Marcellus Shale, running along the spine of the Appalachian Mountains.  With this discovery came the advent of horizontal drilling and hydraulic fracturing technologies—or "fracking"—which allowed developers to tap into this new gas field on the cheap.  Easy profits led to greater land speculation and more drilling.  By 2010, gas companies began drilling several thousand feet below the Marcellus Shale and into the Utica Shale, which may contain even more oil and natural gas than its predecessor.

Enticed by the residual possibilities and profits of this modern oil and gas rush, a pair of LLCs from Ohio and Pennsylvania teamed up to create a third LLC, known as Water Energy Services, LLC ("WES"), to operate several Class II injection wells in Southeastern Ohio.[3] On March 5, 2015, Tri-State (an Ohio LLC) and SPV (a Pennsylvania LLC) entered an operating agreement to form WES—a Pennsylvania LLC with its principal place of business, facilities, and operations all based near Marietta, Ohio.

---

[2] In adjudicating this motion to dismiss, the Court accepts as true all well-pleaded factual allegations from the amended complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

[3] Injection wells pump brine and other leftover contaminants back into porous geologic formations within the Earth's crust.  *See* Peter Folger & Mary Tiemann, Cong. Research Serv., R43836, *Human-Induced Earthquakes from Deep-Well Injection: A Brief Overview* (2016).

Under the Operating Agreement, Tri-State and SPV each own fifty percent of WES. Moreover, both Tri-State and SPV have an equal say in how WES is managed: the company is run by a two-person board of managers, with one manager appointed by Tri-State and the other appointed by SPV. Tri-State appointed John Jack to the WES board of managers, and SPV appointed Dean Grose. Jack also serves as the CEO of WES, while Grose remains active in the company's day-to-day operations as well through his role on its board of managers.

At first, WES's business went according to plan. By the end of 2015, WES had completed construction of several injection wells. And by early 2016, WES had become fully operational—pumping waste water back into the ground "24 hours a day, seven days a week." (Pls.' Compl., Doc. 4, PageID 130). But before obtaining any of this "success," a third party wanted to purchase WES's operations. In the fall of 2015, while WES was still completing construction of its injection wells, Cequel Energy Capital Partners, LLC ("Cequel") became interested in purchasing WES. Cequel presented WES with a letter of intent, offering to buy the company for over $17 million, which was roughly over $10 million in excess of all debts that WES had incurred. Despite this lucrative offer, SPV vetoed the sale. And without SPV's consent, Tri-State was powerless to act. Accordingly, the letter of intent expired in early 2016, and Tri-State and SPV remained wedded in their new venture.

Jack and Tri-State allege that, following SPV's refusal to pursue the offer to sell, Grose and SPV engaged in a concerted effort to remove Jack from the board of WES, to remove him as CEO to gain control of WES, and to deprive him of financial compensation to which he is otherwise entitled. Jack and Tri-State allege that these machinations have trickled down into Tri-State's *own* affairs, with Grose and SPV joining other Tri-State ownership interests in an effort to gain control of Tri-State itself.

Jack and Tri-State further allege that WES's management has become deadlocked by disagreements, lack of cooperation, and improper accusations that Grose and SPV have made against Jack.  In other words, Jack and Tri-State allege that Grose and SPV have engaged in a concerted effort to sideline Jack, to deadlock decision-making at WES, and ultimately, to seize control of WES for themselves.

Matters came to a head on May 26, 2016, when SPV made a formal demand on Jack and Grose, as the board of managers of WES, to remove Jack for breach of fiduciary duties, personal dishonesty, gross mismanagement, and incompetence.  Then, on June 9, 2016, SPV sent a notice of expulsion to Tri-State which purported to expel Tri-State from WES altogether.

### B.  Procedural Background

In an apparent race to the courthouse,[4] Jack and Tri-State filed a complaint in the Washington County (Ohio) Court of Common Pleas on June 3, 2016.  They later amended that complaint to include five claims: (1) a breach of contract claim based on an alleged breach of the WES Operating Agreement; (2) a request for injunctive relief regarding the alleged contractual breach and attempts to expel Jack and/or Tri-State from WES; (3) a request for declaratory judgment regarding the efforts to remove Jack as manager and CEO and to expel Tri-State from WES; (4) a breach of fiduciary duty claim regarding alleged improper conduct and self-dealing; and (5) a defamation claim regarding alleged false and defamatory statements about Jack and Tri-State.  On June 30, 2016, Grose and SPV removed the matter to federal court on the basis of diversity jurisdiction.  Grose and SPV now move to dismiss Counts One through Four. The matter is fully briefed and ripe for review.

---

[4] Curiously, SPV filed suit against Jack, Tri-State, and WES (as a "nominal defendant") in Pennsylvania state court on August 15, 2016—nearly a month and a half after Jack and Tri-State brought this action. (*See* Ex. 1 to Pls.' Mem. in Opp'n, Doc. 13-1, PageID 390).  In that suit, SPV raises many of the same claims at issue here and seeks the expulsion of Tri-State as a member of WES.  (*Id.*).  Neither party explains, in any detail, how SPV's suit in Pennsylvania state court impacts this litigation or vice versa.

## II.  STANDARD OF REVIEW

The defendants moved to dismiss Counts One through Four of the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Under these rules, plaintiffs bear the burden of establishing that the Court "has jurisdiction over [their] claim[s]" and that the complaint "contains sufficient factual matter to state a claim for relief that is plausible on its face."  *See Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (citations omitted).

Where, as here, a defendant facially attacks the court's subject-matter jurisdiction, say, due to a lack of standing, "a trial court takes the allegations in the complaint as true," just as the court would "under [a] 12(b)(6) motion[] to dismiss."  *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

As to Rule 12(b)(6), a claim bears facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  In assessing the sufficiency and plausibility of a claim, courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (quotation omitted).

## III.  ANALYSIS

Grose and SPV challenge the plaintiffs' standing and their ability to state a claim for which relief can be granted on several grounds.  The Court will address each argument in turn.  But first, the Court must decide which substantive law governs this diversity action—Pennsylvania's or Ohio's.  So often, the rules of the game determine its outcome.

### A.  Pennsylvania Law Governs this Dispute.

Federal courts exercising their diversity jurisdiction must apply the choice-of-law rules of the state in which they sit.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013).  In other words, the Court must determine whether a state court in Ohio would apply Ohio law, or the law of some other state, in resolving this case.

Ohio courts apply the "internal affairs doctrine" in appropriate cases—meaning "[t]he law of the state of incorporation normally determines issues related to the internal affairs of a corporation."  *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2010 WL 1433362, at *2 (S.D. Ohio Apr. 7, 2010); *see also, e.g.*, *Heine v. Streamline Foods, Inc.*, 805 F. Supp. 2d 383, 389 (N.D. Ohio 2011) ("Ohio applies the internal affairs doctrine in appropriate cases."); *Bryan v. DiBella*, No. 08AP-418, 2009-Ohio-1101, at ¶¶ 12-13 (10th Dist. Ct. App.) (applying internal affairs doctrine to choice-of-law dispute).  This doctrine aptly recognizes "that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."  *State ex rel. Petro v. Gold*, 166 Ohio App. 3d 371, 390 (Ohio Ct. App. 2006) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)).

This dispute centers on the internal affairs of WES, because the claims at issue all target internal corporate governance issues and the contractual and fiduciary duties owed among the parties in their roles as LLC members or managers.  *See Heine*, 805 F. Supp. 2d at 389 ("The fiduciary duties owed by directors of a corporation are internal affairs."); *Bryan*, 2009 Ohio-1101, at ¶¶ 13-14 (applying internal affairs doctrine where plaintiff alleged that defendant "breached his fiduciary duties to [corporate] shareholders in connection with [his] management of [the company] and the sale of its assets").  Accordingly, Pennsylvania law applies, because that is the state of WES's incorporation.[5]

### B.  Pennsylvania Law Governing the Duties of LLC Managers and Members Generally Mirrors Pennsylvania Law Governing Ordinary Business Corporations.

As set forth in Section 1 of the Operating Agreement, WES is a Pennsylvania LLC, "organized under the Pennsylvania Limited Liability Company Law of 1994," which is codified at Pennsylvania Consolidated Statutes § 8901, *et seq.* ("the LLC Act").  (Doc. 4, PageID 198).  Last year, Pennsylvania repealed the LLC Act in its entirety and replaced it with the Pennsylvania Uniform Limited Liability Company Act of 2016.  *See* Act of Nov. 21, 2016, P.L. 1328, No. 170, § 1, Ch. 88 (to be codified at 15 Pa. Cons. Stat. § 8811, *et seq.*).  Nevertheless, the new Limited Liability Company Act does not become effective until April 1, 2017, for LLCs like WES, which were formed on or before February 21, 2017.  *Id.* at § 1, Ch. 88, Subchapter A (to be codified at 15 Pa. Cons. Stat. § 8811(b)-(c)).  Accordingly, the Court looks to the old LLC Act in resolving this dispute.

---

[5] Even if the internal affairs doctrine does *not* apply, Pennsylvania law still would govern this case because WES's Operating Agreement contains a choice-of-law provision that clearly and unambiguously provides that all disputes arising from the agreement "shall be governed by the laws of the state of Pennsylvania."  (Ex. D to Pls.' Compl., Doc. 4, PageID 219); *Schulke v. Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438 (Ohio 1983) (holding that Ohio courts must apply the law of the state "chosen by the parties to govern their contractual rights and duties" unless two exceptions, both of which are inapplicable here, arise) (quoting Restatement (Second) of Conflict of Laws, § 187 (1971)).

Although LLCs constitute a unique form of business organization, Pennsylvania law generally treats the duties of LLC managers and members the same as ordinary corporate directors and shareholders.  WES was founded as a "manager-managed" LLC, as opposed to a member-managed LLC.  (*See* Doc. 4, PageID 206); *see also* Pa. Cons. Stat. § 8941(b) ("The certificate of organization may provide that management of a company shall be vested . . . in one or more managers.").  In setting forth the duties of LLC managers and members in a manager-managed LLC, the Pennsylvania LLC Act provides, in relevant part, as follows:

> **(b) Companies with managers.—**If the certificate of organization provides that the company shall be managed by one or more managers:
>
>> (1) Sections 1711 (relating to alternative provisions) through 1717 (relating to limitation on standing) shall be applicable to representatives of the company.  A written provision of the operating agreement may increase, but not relax, the duties of representatives of the company to its members under those sections.  For purposes of applying the provisions of those sections, references to the "articles of incorporation," "bylaws," "directors" and "shareholders" shall mean the certificate of organization, operating agreement, managers, and members, respectively.
>>
>> (2) A member who is not a manager shall have no duties to the company or to the other members solely by reason of acting in his capacity as a member.

15 Pa. Cons. Stat. § 8943(b).

Sections 1711 through 1717, which are incorporated into the LLC Act, are part of the Pennsylvania Business Corporation Law of 1988.  *See* 15 Pa. Cons. Stat. § 1101, *et seq.*  Thus, Pennsylvania generally treats managers and members of a manager-managed LLC the same as directors and shareholders of a business corporation, unless the operating agreement specifies otherwise.  *Id.* § 8943(b)(1); *see also* 2001 Committee Comment to 15 Pa. Cons. Stat. § 8943 ("Subsection (b)(2) makes clear that members who do not act as managers, like corporate shareholders and limited partners, do not have the fiduciary duties of managers.").

**C.  Count One (Breach of Contract) States a Claim on Which Relief Can Be Granted.**

Count One alleges that Grose and SPV breached the WES Operating Agreement by, among other acts, seeking Tri-State's expulsion from WES, seeking Jack's removal as Tri-State's appointed manager of WES, and seeking Jack's removal as WES's CEO. As explained below, Jack and Tri-State have stated a claim for breach of contract upon which relief can be granted, but liability on that claim (if any) is limited to SPV.

Under Pennsylvania law, a plaintiff alleging breach of contract must plead the following: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002); *see also Omnicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004).  To plead breach of contract, a plaintiff ordinarily must have "a direct contractual relationship" with the defendant. *Global Ground Support, LLC v. Glazer Enters., Inc.*, 581 F. Supp. 2d 669, 674 (E.D. Pa. 2008); *see also Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961) ("Generally a party to a contract does not become liable for a breach thereof to one who is not a party thereto.").

The Court finds that Tri-State has stated a claim for breach of contract against SPV. Tri-State and SPV entered a contract (the WES Operating Agreement), the essential terms of which are not in dispute.  (*See* Doc. 4, PageID 198-222).  Tri-State has alleged a breach of duty imposed by the Operating Agreement in that SPV: (1) wrongfully tried to expel Tri-State from the company under Section 24 of the Operating Agreement, (*id.* at PageID 216-18); (2) tried to remove Jack as Tri-State's appointed manager on WES's board of managers, in violation of Section 14.1 of the Operating Agreement, (*id.* at PageID 206); and (3) tried to remove Jack as WES's CEO, in violation of Section 14.3 of the Operating Agreement, (*id.* at PageID 209), among other acts.  Tri-State, moreover, has alleged damages as a result of those breaches.

Grose and SPV argue that Tri-State's breach-of-contract claim fails because they were "unable to locate any authority which would permit a direct cause of action by one 50% [LLC] member against another 50% member for a breach of the company operating agreement." (Doc. 9, PageID 312).  This argument reflects a misunderstanding between direct claims for breach of contract and derivative claims for breach of fiduciary duty, which the Court will address in Section III.F., *infra.*  Regardless, ample authority permits a direct cause of action by one 50% LLC member against another for breach of the company's operating agreement.

The Pennsylvania Supreme Court has explained that "[t]here can . . . be no doubt that a stockholder can maintain a[] [direct] action where the act of which complaint is made is not only a wrong against the corporation, but is also in violation of duties arising from contract or otherwise, and owing to him directly."  *White v. First Nat'l Bank*, 97 A. 403, 405 (1916); *see also Hill v. Ofalt*, 85 A.3d 540, 548 (Pa. Super. 2014) ("If the injury is one to the plaintiff as a shareholder as an individual, and not to the corporation, for example, where the action is based on a contract to which the shareholder is a party, . . . it is an individual action [that can be brought directly]." (quotation omitted)).  And Pennsylvania's lower courts routinely permit 50% LLC members or shareholders to bring direct actions against another member or shareholder for breach of contract.  *See, e.g.*, *Harbor Hosp. Servs., Inc. v. Gem Laundry Servs., LLC*, No. 4830, 2001 WL 1808556, at *5-9 (Pa. Com. Pls. July 18, 2011) (allowing one LLC member to bring direct action against another for breach of operating agreement); *Baron v. Pritzker*, No. 1574, 2001 WL 1855054, at *7-10 (Pa. Com. Pls. Mar. 6, 2001) (allowing one 50% shareholder to bring direct action for breach of contract against another 50% shareholder); *Levin v. Schiffman*, No. 4442, 2001 WL 1807922, at *5-7 (Pa. Com. Pls. Feb. 1, 2001) (same).  Thus, Tri-State may bring a direct action against SPV for breach of the WES Operating Agreement.

Grose and SPV also argue that any breach-of-contract claim must be dismissed, in part, because "Grose is not a party to the Operating Agreement so it is not possible for him to have breached [it] [and] Jack is not a party to the Operating Agreement; thus he has no standing to assert a breach of the Operating Agreement against either Grose or SPV."  (Doc. 9, PageID 312).

The Court agrees, at least in part.  In general, privity of contract must exist to allege a breach of contract.  *See Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992).  And "for parties to be considered in privity, a contractual relationship must exist between them."  *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1006 (Pa. 2003).  Here, neither Jack nor Grose was privy to the WES Operating Agreement; only Tri-State and SPV were privy to the contract.  (Doc. 4, PageID 198).  Accordingly, Jack presumptively lacks standing to assert a breach-of-contract claim against either defendant, and Grose cannot be liable to Tri-State (or Jack) for SPV's breach.

The Court recognizes, however, that Pennsylvania has adopted an exception to the general rule of privity for third-party beneficiaries of a contract.  *Scarpitti*, 609 A.2d at 149 (recognizing adoption of Restatement (Second) of Contracts § 302 (1979)); *Tredennick v. Bone*, 647 F. Supp. 2d 495, 498 (W.D. Pa. 2007) (same).  Under that exception, a non-contracting party may bring a breach-of-contract claim against a party to the contract where the non-contracting party was the intended third-party beneficiary of the contract.  *See Scarpitti*, 609 A.2d at 149.

One way to demonstrate status as a third-party beneficiary is by showing that "both parties to the contract express[ed] an intention to benefit the third party in the contract itself."  *Id.* at 150 (citation omitted).  Here, the Court finds such an intention to benefit Jack in the Operating Agreement, because Section 14.1 specifies that Jack will serve not only as Tri-State's sole representative on WES's board of managers, but also as WES's initial CEO, and both appointments come with significant job protections.  (*See* Doc. 4, PageID 206, 209).

Another way to demonstrate status as a third-party beneficiary is under a "two part test" from the Restatement (Second) of Contracts § 302, which the Pennsylvania Supreme Court has explained as follows:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promise to pay money to the beneficiary" or "the circumstances must indicate that the promise intends to give the beneficiary the benefit of the promised performance."

*Scarpitti*, 609 A.2d at 149 (quotation omitted).  The first portion of the test "sets forth a standing requirement which leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate."  *Id.*  The second portion "defines the two types of claimants who may be intended as third party beneficiaries."  *Id.*

Jack argues that he qualifies as a third-party beneficiary under this test because WES was organized to deliver profit to its members (Tri-State and SPV), and Jack has two ownership units in Tri-State: (1) a personally owned minority share; and (2) an indirectly owned majority share through his 50% ownership of Horizon Partners Investments, LLC.  Jack argues that "[b]ecause WES's primary purpose is to generate profits for the individuals that make up its members, recognition of [his] right to performance under the [Operating Agreement] 'is appropriate to effectuate the intention of the parties.'"  (Pls.' Resp. in Opp'n, Doc. 13, PageID 380).  Jack further argues that, with this primary purpose in mind, "any performance promised by SPV is intended to benefit [him]."  (*Id.*).  The Court, it its discretion, agrees.  *See Camp Ne'er Too Late, LP v. Swepi, LP*, 185 F. Supp. 3d 517, 541 (M.D. Pa. 2016) (citing favorably to *Miller v. Butler*, No. 1:12-cv-01004, 2012 WL 5868962 (D.N.J. Nov. 6, 2012), which "confirm[ed] that courts may find adequate standing in contract disputes where the plaintiffs themselves contributed the contested property, even if those plaintiffs were not parties to the underlying contract").

12

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** the defendants' motion to dismiss Count One.  Grose is dismissed as a defendant on this count, but Jack and Tri-State may proceed against SPV for breach of the Operating Agreement.

### D.  Count Two (Injunctive Relief) States a Claim on Which Relief Can Be Granted.

Count Two requests injunctive relief in the form of an order prohibiting Grose and SPV from seeking Jack's ouster as one of WES's managers.  Jack and Tri-State allege that Grose and SPV violated Section 14.1 of the Operating Agreement by seeking Jack's ouster, and that both plaintiffs will suffer irreparable harm if the defendants are not enjoined from further efforts to remove Jack as one of WES's managers.  To be clear, Jack and Tri-State seek a permanent injunction, not a preliminary injunction.  (Doc. 4, PageID 137-38).  Here again, the Court finds that Jack and Tri-State have stated a claim on which relief can be granted.

Under Pennsylvania law, a party seeking permanent injunctive relief "must establish that his [or her] right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested."  *Boring v. Google, Inc.*, 362 F. App'x 273, 282 (3d Cir. 2010) (quoting *Kuznik v. Westmoreland Cnty. Bd. of Commr's*, 902 A.2d 476, 489 (Pa. 2006)).  Prevailing on a claim for a permanent injunction and *pleading* such a claim are, of course, two separate matters. Pennsylvania courts thus hold that "for the opposing party to prevail on preliminary objections in the nature of a demurrer to such a claim for relief,"—i.e., to prevail on a motion to dismiss—"the court must find that the petition is *clearly insufficient* to establish a right to injunctive relief." *P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105, 1113 (Pa. Cmwlth. 1996) (emphasis added); *see also Doe v. Franklin Cnty.*, 139 A.3d 296, 319-20 (Pa. Cmwlth. 2016) (same).  Moreover, "any doubt must be resolved in overruling the demurrer."  *P.J.S.*, 669 A.2d at 1113.

The Court finds that Jack and Tri-State have pleaded the required elements for a claim to permanent injunctive relief.  The amended complaint sets forth a colorable, if not compelling, claim for breach of contract regarding SPV's attempted ouster of Jack as one of WES's managers.  Section 14.1 of the Operating Agreement establishes that "[t]he Board shall consist of two Managers, one appointed by SPV, who shall initially be Dean Grose (the 'SPV Manager'), and one appointed by Tri-State, who shall initially be John Jack (the 'Tri-State manager')." (Doc. 4, PageID 206).  Critically, the Operating Agreement also establishes that "[t]he SPV Manager may only be removed by SPV, and any vacancy shall be filled by SPV," while "*[t]he Tri-State Manager may only be removed by Tri-State*, and any vacancy shall be filled by Tri-State."  (*Id.* (emphasis added)).  In other words, Tri-State—and Tri-State alone—may "oust" Jack from the WES board of managers.

SPV argues that these provisions on appointment and removal are "clearly subordinate" to a provision governing the fiduciary duties that managers owe to the company and its members. (Doc. 9, PageID 313).  But that language, which states that "the Managers and officers of the Company . . . shall owe to the Company and its Members the fiduciary duties (including the duties of loyalty and due care) of the type owed under law by directors and officers of a business corporation," says *nothing* about removing a manager for violating his or her fiduciary duties. (*See* Doc. 4, PageID 206-07).  As such, the more specific provisions regarding the appointment and removal of managers control over the more general provision regarding their fiduciary duties, and Jack and Tri-State have alleged facts that arguably show their entitlement to relief. *See Andrichyn v. TD Bank, N.A.*, 93 F. Supp. 3d 375, 385 (E.D. Pa. 2015) ("It is a fundamental principle of contract interpretation that specific provisions control more general ones.  Courts in both New York and Pennsylvania follow this principle." (citations omitted)).

14

The Court also finds that Jack and Tri-State adequately pleaded the necessity of a permanent injunction and that greater injury will result from refusing, rather than granting, the requested relief.  WES is controlled *solely* through its board of managers.  If one member could oust the other member's manager unilaterally, without following the Operating Agreement's procedures for "deadlock[s]," then the entire benefit of the bargain would crumble.  The ousting party could bend the company to its will, depriving the other member of a say in matters and all the opportunities that attend to such decision-making.  Put simply, money damages may not adequately account for these harms, just as all the king's horses and all the king's men could not put Humpty Dumpty back together again.  Likewise, Jack and Tri-State adequately pleaded that a greater injury might result from refusing to grant injunctive relief.  *See Roth v. Columbia Distrib. Co. of Allentown*, 89 A.2d 825, 829-30 (Pa. 1952) (affirming grant of injunctive relief where defendants threatened to "ouster" corporate director, in breach of contract, thereby depriving him of employment and corporate opportunities, including stock options).

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** the defendants' motion to dismiss Count Two.  As with Count One, Grose is dismissed as a defendant since he was not privy to the Operating Agreement, which serves as the underlying basis for relief.  Jack and Tri-State, however, may proceed against SPV in seeking a permanent injunction.

### E.  The Court Declines to Exercise its Jurisdiction over Count Three.

Count Three requests a declaratory judgment setting forth the parties' rights under two provisions of the Operating Agreement: Section 14.1, which governs the appointment and removal of WES managers, and Section 24, which governs the expulsion of members.  More specifically, Jack and Tri-State seek a declaration that SPV cannot unilaterally remove Jack as a manager and that Grose and SPV cannot seek Tri-State's expulsion.

An action for declaratory judgment is procedural in nature and purpose. Federal courts exercising their diversity jurisdiction therefore follow federal procedural rules and, "thus, federal law determines the rules to apply to a request for declaratory judgment relief in a given case." *Munich Welding, Inc. v. Great Am. Ins. Co.*, 415 F. Supp. 2d 571, 574 (W.D. Pa. 2006) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986)). Thus, although state law provides the substantive rights of the parties under a contract, "the question of justiciability is a federal issue to be determined only under federal law." *Smithkline Beecham Corp. v. Continental Ins. Co.*, No. 04-2252, 2004 WL 1773713, at *2 (E.D. Pa. Aug. 4, 2004) (quotation omitted).

The Declaratory Judgment Act does not mandate that federal district courts exercise jurisdiction over every declaratory judgment action. Rather, the Act provides as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). In other words, the Act provides district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilson v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

Federal district courts in Pennsylvania routinely decline to exercise their jurisdiction under the Declaratory Judgment Act where the "request for a declaratory judgment [is] duplicative of a breach of contract claim." *See, e.g.*, *Nova Fin. Holdings, Inc. v. Bacinsure, Inc.*, No. 11-07840, 2012 WL 1322932, at *4 (E.D. Pa. Apr. 17, 2012) (citing *Smithkline Beecham Corp.*, 2004 WL 1773713, at *2). The reason for declining to hear such duplicative claims is straight-forward: "judicial economy." *Id.*

Here, Jack and Tri-State seek a declaratory judgment outlining the parties' contractual duties under the WES Operating Agreement as it relates to the removal of managers and the expulsion of members.  But Jack and Tri-State raise those very same issues in Counts One (breach of contract) and Two (seeking injunctive relief), because "[a] crucial element in every breach of contract action requires a showing of a breach of some duty owed." *Id.*  Thus, those claims "raise[] the exact same issue[s] to be decided in [this] declaratory judgment [claim], the purpose of which is to determine the respective rights and duties of the parties." *See id.* (quotation omitted).  Under these circumstances, the Court acts within its discretion in dismissing the declaratory judgment count "for reasons of judicial economy." *Id.* (quoting *Good Lad Co. v. B & W Assocs.*, No. 98-6612, 1999 WL 79662, at *2 (E.D. Pa. Feb. 9, 1999)). The Court notes that, as in *Nova Financial* and similar cases, the plaintiffs "will not suffer prejudice from this ruling since they can still attain full relief from their breach of contract claim." *Id.*  And here, as in *Nova Financial* and similar cases, the plaintiffs "fail to set forth any relevant judicial precedent or policy considerations to refute this finding." *Id.*; *see also Smithkline Beecham Corp.*, 2004 WL 1773713, at *2.

Accordingly, the Court **GRANTS** the defendants' motion to dismiss Count Three.

### F.  Count Four (Breach of Fiduciary Duty) States a Claim on Which Relief Can Be Granted.

Count Four alleges that Grose and SPV violated their fiduciary duties by, among other acts, engaging in self-dealing and depriving Jack and Tri-State of legitimate business opportunities.  More specifically, Jack and Tri-State allege that Grose and SPV have frozen them out of corporate decision-making, resulting in gridlock within WES, and have sought to sell WES or its assets to third parties in a manner that deliberately eliminates Tri-State from realizing any gains from its ownership interest.

17

To state a claim for breach of fiduciary duty, "a plaintiff must first establish that a fiduciary or confidential relationship existed between [plaintiff] and the defendants." *Fox Int'l Relations v. Fiserv Secs., Inc.*, 490 F. Supp. 2d 590, 615 (E.D. Pa. 2007) (quotation omitted). In addition to alleging a fiduciary relationship, a plaintiff must also plead: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all [relevant] matters . . . ; (2) that the plaintiff suffered injury; and (3) that the [defendant's] failure to act solely for the plaintiff's benefit . . . was a real factor bringing about plaintiff's injuries." *See Dinger v. Allfirst Fin., Inc.*, 82 F. App'x 261, 265 (3d Cir. 2003); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006).

Grose and SPV move to dismiss Count Four *solely* on the ground that Jack and Tri-State lack standing to bring a direct cause of action for breach of fiduciary duty.[6]  Grose and SPV argue that Pennsylvania's Business Corporation Law, which has been incorporated to manager-managed LLCs through 15 Pa. Cons. Stat. § 8943, limits the duties owed to LLC members and permits only derivative actions by those members.  The crux of their argument is that an LLC member cannot bring a private action against the managers of the company when the injury has been suffered by the company rather than by the member individually.  (Doc. 9, PageID 310-11 ("Defendants have been unable to locate any cases decided under Pennsylvania law which permit a direct cause of action by one fifty percent (50%) shareholder against another 50% shareholder for breach of fiduciary duty.")).  As explained below, however, Grose and SPV misconstrue both the law and the factual allegations surrounding Count Four; thus, Tri-State may bring a direct action against Grose and SPV for breach of fiduciary duty.

---

[6] The Court agrees that Jack lacks standing to bring a breach-of-fiduciary-duty claim on his own behalf because he is not a member of WES.  Plaintiffs seem to concede as much in their Response in Opposition. (*See* Doc. 13, PageID 383 n.11 ("Plaintiffs' Complaint should not be read as asserting claims for breach of fiduciary duty on behalf of Jack as manager and officer of WES.  Rather, the claims are brought on behalf of Tri-State [with] Jack [serving] as agent and representative of Tri-State.")).

To be sure, under Pennsylvania's Business Corporation Law, the duties of corporate directors are "solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, *and may not be enforced directly by a shareholder or by any other person or group.*"  Pa. Cons. Stat. § 1717 (emphasis added).  In other words, under Pennsylvania law, "an action for breach of fiduciary duty may only be brought by the corporation directly, or in the alternative, by a shareholder through a derivative action brought on behalf of the corporation." *In re Bruno*, 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016) (citing Pa. Cons. Stat. § 1717); *Hill*, 85 A.3d at 548 (describing derivate suits).  Shareholders, creditors, and others are generally "prohibited from bringing a direct action against the directors for a breach of their fiduciary duties." *In re Bruno*, 553 B.R. at 286.  Because Pennsylvania's LLC Act incorporates this restriction for manager-managed LLCs, "[a] member of an LLC generally only has derivative standing" to bring suit. *In re Sobol*, 545 B.R. 477, 494 (Bankr. M.D. Pa. 2016); *see also* 15 Pa. Cons. Stat. § 8992 (outlining authority to bring derivative suits "on behalf of a limited liability company").

Nevertheless, corporate shareholders (and LLC members) always "have standing to sue individually" so long as they "allege a direct, personal injury—that is independent of any injury to the Corporation" and are entitled to receive the benefit of any recovery. *Hill*, 85 A.3d at 548; *see also Fishkin v. Hi-Acres, Inc.*, 462 Pa. 309, 316 n.4 (Pa. 1975) (recognizing availability of direct shareholder actions).  As the Middle District of Pennsylvania explained, "[a] shareholder may . . . bring an action against a corporation and others when the injury is one to the plaintiff as a shareholder in his individual capacity, and not to the corporation." *Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 677, 681-82 (M.D. Pa. 1994) (denying motion to dismiss where plaintiff shareholder alleged "a full blown scheme to squeeze him out").

Accordingly, district courts applying Pennsylvania law routinely allow direct actions in cases involving close corporations where a minority or 50% shareholder alleges individual harm from being "frozen out" by the company or another ownership interest.  *Id.* at 681-83; *see also Cooper v. Rucci*, No. 07-00036, 2008 WL 942710, at *1-7 (W.D. Pa. 2008) (collecting cases) (holding that Pennsylvania Supreme Court likely would adopt a rule permitting direct actions for breach of fiduciary duty from 50% shareholders who were frozen out or denied corporate opportunities); *Willis v. Dillsburg Grain & Mill Co.*, 490 F. Supp. 46, 50 (M.D. Pa. 1980) (holding that shareholder could assert a direct cause of action against a corporation and majority shareholder where "the complaint alleges that the defendants have taken a course of conduct to 'squeeze out' the plaintiff from all participation in the defendant corporation").

Pennsylvania state courts hold likewise.  For example, in *Liss v. Liss*, the Court of Common Pleas acknowledged the general limitation on standing from Pa. Cons. Stat. § 1717. No. 2063, 2002 WL 576510, at *5 (Pa. Com. Pls. Mar. 22, 2002).  But the court noted that "[t]his section does not speak to the situation of a fifty percent (50%) shareholder oppressing or freezing-out the other fifty percent (50%) shareholder in a close corporation."  *Id.*  After outlining the distinctions between direct and derivative claims, the court permitted a direct claim for breach of fiduciary against one 50% shareholder because: (1) the injured shareholder was individually harmed; and (2) the offending shareholder "froze out" the injured shareholder by depriving him of his rights to ownership.  *Id.*  The court explained that the plaintiff's alleged damages "relate not merely to the decrease in value of [the company] or [his] interest therein." *Id.*  Rather, "the damages include . . . being deprived of his rights of ownership and other corporate benefits primarily through [defendant's] allegedly oppressive and fraudulent conduct and the alleged conspiracy . . . to deprive [plaintiff] of his interest in [the company]."  *Id.*

Likewise, in *Baron v. Pritzker*, the court allowed one 50% shareholder to bring a direct action against another where he alleged that the offending shareholder "froze him out of the business, wasted corporate assets and refused to honor a shareholders buyout agreement." No. 1574, 2001 WL 1855054, at *4-7 (Pa. Com. Pls. Mar. 6, 2001).  Although the court recognized the general limitations on corporate fiduciary duties and standing to bring direct causes of action, the court permitted one 50% shareholder to bring a breach-of-fiduciary-duty claim and several breach-of-contract claims without making a demand from the board to bring a derivative suit.  *Id.* at *6 & n.11 ("[Defendant] argues that he owes no fiduciary duties to [Plaintiff] directly, that [Plaintiff] must bring any fiduciary claim derivatively, and that a derivative claim must fail because [Plaintiff] did not make demand on the boards of the companies.  The court overrules [Defendant's] demurrer.").

The court in *Baron* explained its holding and the need to prevent abuse of minority or frozen-out 50% shareholders as follows:

> A *majority* shareholder of a Pennsylvania corporation owes a fiduciary or quasi-fiduciary duty to a minority shareholder that prevents the majority shareholder from using his power in such a way as to exclude the minority shareholder from his proper share of the benefits of the corporation. . . .
>
> [T]he recognized bases for imposing duties on majority shareholders lead this court to conclude that it should impose those duties on Pritzker.  A majority shareholder has the power to dictate to minority shareholders the manner in which the corporations are to be run.  To prevent the majority shareholder from abusing that power, the law imposes fiduciary duties on him.  That same rationale applies to [50% shareholders]. . . . Since Pritzker is a 50% shareholder of the corporations, Baron cannot remove Pritzker from the boards. . . . Pritzker owes fiduciary duties to Baron that prevent Pritzker from using his power in such a way as to exclude Baron from a proper share of the benefits of the corporations. Count III of the complaint states a legally sufficient claim for breach of those duties, and Baron may bring a direct claim.

*Id.* at *6 (citations omitted).

Although the cases discussed above all involved closely held corporations, and not LLCs, the Court finds that their lessons apply with equal force in this case due to § 8943(b)'s incorporation of corporate-law principles to manager-managed LLCs.  In fact, the drafters of § 8943 explicitly stated that they "intended that *the courts will fashion rules in appropriate circumstances* by analogy to principles of corporate or partnership law *to deal with situations such as oppression of minority members*, actions taken in bad faith, etc."  Committee Comment to 15 Pa. Cons. Stat. § 8943 (emphasis added).  Other jurisdictions similarly hold that claims for breach of an LLC operating agreement or breach of fiduciary duty are direct claims, rather than derivative claims, because the party seeking relief is individually harmed by the breaching party.  *ECR Props., LLC v. Camden Cnty. Dev., LLC*, 998 F. Supp. 2d 1295, 1310 (M.D. Ala. 2014); *Ayres v. AG Processing, Inc.*, 345 F. Supp. 2d 1200, 1207-09 (D. Kan. 2004).

So too here.  Count Four properly asserts a direct claim, because the harms alleged are unique to Tri-State (rather than being shared by WES or SPV), and any benefits will flow to Tri-State alone (as opposed to WES or SPV).  *See, e.g.*, *Cooper*, 2008 WL 942710, at *4-7; *Liss*, 2002 WL 576510, at *5; *Baron*, 2001 WL 1855054, at *4-6.  Moreover, treating Count Four as a direct claim rather than a derivative claim comports with Section 7.01(d) of the ALI Principles of Corporate Governance, which several Pennsylvania courts have adopted in excusing any demand requirement or requiring a derivative action.  *See Cooper*, 2008 WL 942710, at *6-7.  With only two LLC members, there is no risk of exposing WES to a multiplicity of lawsuits.  *Id.* at *7.  A direct action "will also not materially prejudice the interests of creditors, if any."  *Id.*  And allowing Count Four to proceed as a direct action will not interfere with a fair distribution of recovery among all interest parties because any recovery will be split between the two warring factions, who seem to be the only interested parties.  *Id.*

Framed in the correct lens, Count Four properly pleads a direct claim for breach of fiduciary duty against a 50% member, not a derivative action.  The Court, therefore, will not dismiss this Count Four due to an alleged lack of standing or the purported unavailability of a direct cause of action by one 50% LLC member against another.

Accordingly, the Court **DENIES** the defendants' motion to dismiss Count Four.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion(s) to dismiss the amended complaint.  (Docs. 6 and 8).

- Count One is **DISMISSED** as to Dean Grose only;

- Count Two is **DISMISSED** as to Dean Grose only; and

- Count Three is **DISMISSED** in its entirety.

    **IT IS SO ORDERED.**

                    **s/Algenon L. Marbley**
                    **ALGENON L. MARBLEY**
                    **UNITED STATES DISTRICT JUDGE**


**DATED:  March 13, 2017**

23