**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | **:** | |
| **JOHN JACK,** *et al.***,** | **:** | |
| | **:** | **Case No. 2:16-CV-0633** |
| **Plaintiffs,** | **:** | |
| | **:** | **JUDGE ALGENON L. MARBLEY** |
| **v.** | **:** | |
| | **:** | **Magistrate Judge Kimberly A. Jolson** |
| **SOUTH PARK VENTURES, LLC,** *et al.***,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

## OPINON AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)  (ECF No. 28).  Defendants seek to

dismiss Count Two of the Second Amended Complaint, which alleges that Defendants breached

fiduciary duties.  For the reasons set forth below, the Court **DENIES** Defendants' Motion to

Dismiss.

### I.        BACKGROUND

### A.        Factual Background[1]

Water Energy Services, LLC ("WES") is a limited liability company that was created to

operate Class II injection wells for disposal of wastewater generated by the oil and gas industry

in the Appalachian Basin.  (ECF No. 27 at ¶¶ 15-16).  Fifty-percent (50%) of WES' membership

interest is owned by Defendant South Park Ventures, LLC ("SPV"), which is owned in part and

---

[1] In adjudicating this motion to dismiss, the Court accepts as true all well-pleaded factual
allegations from the second amended complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

controlled by Defendant Dean Grose. (*Id.* at ¶¶ 5, 7). The remaining fifty-percent (50%) of WES' membership interest is owned by Plaintiff Tri-State Disposal, LLC ("Tri-State"). (*Id.* at ¶ 7). Plaintiff John Jack is the manager and a member of Tri-State. (*Id.* at ¶ 1). Horizon Partners, LLC ("Horizon") is also a member of Tri-State. (*Id.* at ¶ 4). Jack is a member of Horizon and holds 50% of its membership interest. (*Id.* at ¶¶ 1, 4). Heinrich Production, LLC ("Heinrich") holds the remaining 50% membership interest in Horizon. (*Id.* at ¶ 4).

WES is a manager-managed limited liability company and has a board with two members—Grose, appointed by SPV, and Jack, appointed by Tri-State. (*Id.* at ¶ 15). Jack also served as the CEO of WES and operated WES day-to-day, along with Noble Zikefoose, the Senior Vice President of Operations, and Terry Clark, the Vice President of Business Development. (*Id.* at ¶ 18). Grose was involved with the management of WES through his position on the board. (*Id.*).

Between 2015 and 2016, WES constructed its facilities and established a customer base, becoming fully operational by early 2016. (*Id.* at ¶¶ 22-24). In 2015, while WES was still completing construction of its injection wells, Cequel Energy Capital Partners, LLC ("Cequel") became interested in purchasing WES. (*Id.* at ¶ 25, Ex. E). Cequel presented WES with a letter of intent, offering to buy the company for an amount in excess of all debts that WES had incurred. (*Id.* at ¶¶ 25, 26, Ex. E). Despite this lucrative offer, SPV and Heinrich declined to pursue it, and instead allowed the letter of intent to expire in early 2016. (*Id.* at ¶ 27).

Jack and Tri-State allege that, following SPV's refusal to pursue the offer, Grose, SPV, and Heinrich engaged in a concerted effort to remove Jack from the board of WES, to remove him as CEO to gain control of WES, and to deprive him of financial compensation to which he is

otherwise entitled. (*Id.* at ¶ 28). Jack and Tri-State allege that Heinrich attempted to gain control of Tri-State and Horizon and remove him from those companies as well.[2] (*Id.*).

As a result, management of WES became deadlocked by disagreement and lack of cooperation. (*Id.* at 30). Jack made several efforts to resolve the issues with Heinrich, SPV, and Grose, including offering to sell his interest in Tri-State and Horizon to Heinrich, or offering to buy Heinrich's interest in Horizon, and offering to sell Tri-State's interest in WES to SPV, or offering to buyout SPV. (*Id.* at ¶¶ 32-35, 38). These efforts did not come to fruition, and deadlock continued. Jack alleges that SPV and Grose made false statements about him, including that he misappropriated money from WES, in order to damage his business reputation and force him to leave WES and forgo financial benefits. (*Id.* at ¶¶ 41, 43).

Jack and Tri-State further allege that Grose and SPV engaged in a private negotiation with Dolphin Capital Group, LLC to sell WES in excess of $21 million, and stated that the profits would not be shared with Tri-State or Jack. (*Id.* at ¶¶ 49-51, Ex. K). On May 26, 2016, SPV made a formal demand on Jack and Grose, as the board of managers of WES, to remove Jack for breach of fiduciary duties, personal dishonesty, gross mismanagement, and incompetence. (*Id.* at ¶ 44, Ex. J). Then, on June 9, 2016, SPV sent a notice of expulsion to Tri-State, which purported to expel Tri-State from WES altogether. (*Id.* at ¶ 53, Ex. L).

In December of 2016, after the above-captioned lawsuit was filed, the assets of WES were sold to Funds Protection Investments ("FPI"), which is an entity formed and controlled by Heinrich and Grose. (*Id.* at ¶¶ 58-59). FPI then sold the WES assets to Deeprock Disposal Solutions, LLC ("Deeprock"), which is controlled by Heinrich, Grose, and SPV. (*Id.* at ¶ 60).

---

[2] Plaintiffs have claims pending against Heinrich in the Washing County Common Pleas Court, Case No. 16 OT 142, which is currently stayed pending arbitration. The arbitration is currently pending before the American Arbitration Association in Case No. 01-16-0003-7711. *See* ECF No. 27 at ¶ 3.

Deeprock terminated Jack's employment with WES, and currently operates the disposal facility that was formerly owned by WES.  (*Id.* at ¶ 61).

## B. Procedural History

On June 3, 2016, Jack and Tri-State initially filed the instant action in the Court of Common Pleas of Washington County, Ohio.  (*See* ECF No. 1 at ¶ 1).  Defendants removed the case on June 30, 2016.  (*Id.*).[3]  Plaintiffs' complaint contained five causes of action: (1) breach of contract; (2) request for injunctive relief; (3) request for declaratory judgment; (4) breach of fiduciary duties; and (5) defamation resulting in libel and slander.  (ECF No. 4).  In July of 2016, Defendants filed a motion to dismiss the complaint.  (ECF No. 8).  On March 13, 2017, this Court issued its Opinion and Order on Defendants' first motion to dismiss, granting it in part and denying it in part.  (ECF No. 25).  Of particular relevance here, the Court allowed Plaintiffs' breach of fiduciary duty claim to go forward against both Grose and SPV.  (*Id.* at 23).  Plaintiffs then filed their second amended complaint on March 23, 2017.  (ECF No. 27).  The second amended complaint contains three counts: (1) breach of contract; (2) breach of fiduciary duties; and (3) defamation resulting in libel and slander.  (*Id.*).  On April 6, 2017, the Defendants filed the instant motion to dismiss, which seeks dismissal of Count II: Breach of Fiduciary Duties. (ECF No. 28).  The matter is fully briefed and ripe for disposition.

---

[3] On June 9, 2016, SPV filed suit against Jack in the Court of Common Pleas of Washington County, Pennsylvania, alleging similar causes of action arising out of the same facts at issue here.  An amended complaint was filed in March of 2017, naming Jack, Zickefoose, and Clark as defendants.  Defendants removed that case to federal court in the Western District of Pennsylvania, and the case was ultimately transferred to the Southern District of Ohio and consolidated with the above-captioned matter.  (*See* 2:17-cv-808, ECF Nos. 1, 26, 37).

## II.  LEGAL STANDARDS

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."[4]  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  The Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions.  *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).  Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

## III.  ANALYSIS

Defendants argue first that Tri-State cannot bring a fiduciary duty claim against SPV because Pennsylvania law does not recognize a fiduciary duty from one 50% shareholder to another, and second, that Tri-State cannot bring a fiduciary duty claim directly against Grose

---

[4] Defendants style their motion as a motion to dismiss under both Rule 12(b)(6) and Rule 12(b)(1).  Rule 12(b)(1) deals with lack of subject-matter jurisdiction.  Defendants' motion seeks to dismiss the complaint for "Fail[ing] to State a Claim for Breach of Fiduciary Duties".  (ECF No. 29 at 6).  This is more appropriately analyzed as a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Indeed, Defendants make no arguments that this Court lacks jurisdiction.  (*See generally* ECF No. 29).  Thus, the Court will apply the legal standards for a motion to dismiss under Rule 12(b)(6).

because the nature of the injury requires a derivate action. (ECF No 29 at 7-8). But, as Plaintiffs correctly point out, this Court has already decided the precise issues at bar and determined that Plaintiff Tri-State's fiduciary duty claim could proceed against both defendants. The Court sees no reason to depart from its prior holding.

### A.      Tri-State Properly Pleads a Direct Action.

As a general rule, under Pennsylvania's Business Corporation Law, the duties of corporate directors are "solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, *and may not be enforced directly by a shareholder or by any other person or group.*" Pa. Cons. Stat. § 1717 (emphasis added). In other words, under Pennsylvania law, "an action for breach of fiduciary duty may only be brought by the corporation directly, or in the alternative, indirectly by a shareholder through a derivative action brought on behalf of the corporation." *In re Bruno*, 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016) (citing Pa. Cons. Stat. § 1717); *Hill v. Ofalt*, 85 A.3d 540 (Pa Super 2014) (describing derivate suits). Shareholders, creditors, and others are generally "prohibited from bringing a direct action against the directors for a breach of their fiduciary duties." *In re Bruno*, 553 B.R. at 286.

The Pennsylvania Limited Liability Company Law of 1994, which governed this action when the previous motion to dismiss was decided, incorporated this restriction for manager-managed LLC. *See In re Sobol*, 545 B.R. 477, 494 (Bankr. M.D. Pa. 2016) ("[a] member of an LLC generally only has derivative standing" to bring suit). The Pennsylvania Uniform Limited Liability Company Act of 2016, however, replaced the 1994 Act, which was repealed in its entirety. *See* Act of Nov. 21, 2016, P.L. 1328, No. 170. The new Limited Liability Act became

effective for all LLCs on April 1, 2017.  15 P.A.C.S.A. § 8811(c).  Thus, the standards have changed.  The 2016 Act provides that:

> [A] member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and protect the member's interests, . . . [so long as the member] plead[s] and prove[s] an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.

15 P.A.C.S.A. § 8881.

In any event, even under the old regime, courts held that corporate shareholders (and LLC members) always "have standing to sue individually" so long as they "allege a direct, personal injury—that is independent of any injury to the corporation" and are entitled to receive the benefit of any recovery.  *Hill*, 85 A.3d at 548; *see also Fishkin v. Hi-Acres, Inc.*, 462 Pa. 309, 316 n.4 (Pa. 1975) (recognizing availability of direct shareholder actions).  Thus, when a shareholder brings suit, "the court is to perform an independent inquiry to determine whether the action is direct or derivative in nature."  *Resh v. Bortner*, No. CV 16-02437, 2016 WL 6834104, at *5 (E.D. Pa. Nov. 21, 2016).  Whether the action is direct or derivative "must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail."  *Id. quoting Hill*, 85 A.3d at 550.  In order to determine the nature of the wrong alleged, a court must look to the body of the complaint.  *Id.*  If the "gravamen of the complaint is injury to the corporation, or to the whole body of its stock," the action is derivative, and the shareholder cannot sue as an individual.  *Id.*  If, on the other hand, "the injury is one to the plaintiff as a shareholder in his individual capacity, and not to the corporation" the shareholder may file a direct action.  *Simms v. Exeter Architectural Prods., Inc.*, 868 F. Supp. 677, 681-82 (M.D. Pa. 1994) (denying motion to dismiss where plaintiff shareholder alleged "a full blown scheme to squeeze him out").

Here, Defendants first argue that Tri-State has failed to sustain any injury or damages. (ECF No. 29 at 9). According to Defendants, the sale inquiries at issue in the complaint never occurred, Tri-State was never actually expelled from WES, Jack was not terminated from his position as CEO of WES, and the assets of WES were sold at an auction, so neither SPV nor Tri-State received any distributions. (*Id.*). At the motion to dismiss stage, however, plaintiffs' well-pleaded allegations will be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Tri-State does allege harm in the second amended complaint. *See* ECF No. 27 at ¶ 28 (alleging that Defendants engaged in a concerted effort to force Jack out and gain control of WES "to the direct detriment and harm of Jack and Tri-State"); *id.* at ¶ 48 (alleging Defendants were freezing Jack and Tri-State out to "deliberately eliminate Tri-State from realizing any financial benefit from its ownership in WES"). These allegations are sufficient to find harm at this stage. *See Liss v. Liss*, 2002 WL 576510, at *5 (Pa. Com. Pls. Mar. 22, 2002) (finding plaintiff's the damages include "being deprived of his rights of ownership and other corporate benefits primarily through [defendant's] allegedly oppressive and fraudulent conduct and the alleged conspiracy . . . to deprive [plaintiff] of his interest in [the company].").

Second, Defendants argue that any injury alleged "would have been suffered by SPV as a member as well and [is] not exclusive to Tri-State or Jack" and as such, can only be brought in a derivative action. (ECF No. 29 at 10). This Court disagrees. As this Court stated in its previous order, Tri-State "properly asserts a direct claim, because the harms alleged are unique to Tri-State (rather than being shared by WES or SPV), and any benefits will flow to Tri-State alone (as opposed to WES or SPV)." (ECF No. 25 at 22). Indeed, an examination of the second amended complaint reveals that the gravamen of the complaint is injury to Tri-State and Jack, not injury to

WES or all shareholders.  Thus, the fiduciary duty claims are properly pled as direct, rather than derivative, claims.

Finally, Defendants argue that "since *Hill*, Pennsylvania does not permit derivative claims to proceed as a direct cause of action."  (ECF No. 29 at 12).  In *Hill*, the plaintiff and defendant[5] each owned 50% of a corporation established to create and operate a restaurant.  85 A.3d at 543-44.  Defendant was tasked with running the day-to-day operations of the business once it was up and running.  *Id.* at 544.  After he assumed control, however, plaintiff alleged that he began unlawfully using the business as a "cash cow" to benefit himself and his family and friends.  *Id.*  As a result, the restaurant incurred debt, "[fell] in arrears to the taxing authorities" and was forced to close.  *Id.*  The court held that all damages alleged by the plaintiff were "'indirect damages' that resulted from an injury to the corporation" and thus held that the plaintiff could not bring a direct action.  *Id.* at 551.  In so holding, the court did acknowledge that a shareholder has standing to sue individually if it properly alleges a direct, personal injury that is independent to any injury to the corporation—it merely held that plaintiff's alleged injury did not meet that standard.  *Id.* at 548, 552.  Tri-State, on the other hand, does meet that standard, as discussed above, so *Hill* does not bar Tri-State's action against Grose.

The *Hill* court further held that the Pennsylvania Supreme Court would likely not adopt Section 7.01(d) of the American Law Institute ("ALI") Principles of Corporate Governance, which states that in the case of closely held corporations, courts, in their discretion, can treat derivative claims as direct claims.  *Id.* at 553.  The court only reached that decision, however, after concluding that the nature of the injury foreclosed the possibility of a direct claim.  *See id.* ("Appellant also argues that—even if his claims are derivative in nature—he has standing to sue .

---

[5] There were actually three defendants in *Hill*, but only one is relevant for the purposes of the fiduciary duty analysis.  Thus, this Court uses "defendant" to refer to Ronald J. Ofalt, Jr.

. . directly because [the restaurant] is a closely held corporation."). Here, the Court need not reach the "even if" because Tri-State properly brings this action as a direct action, given the nature of its alleged injury. Thus, this Court's holding does not turn on whether the Supreme Court of Pennsylvania adopts Section 7.01(d) of the ALI Principles. To be sure, this Court's previous order notes that its holding "comports with Section 7.01(d) of the ALI Principles of Corporate Governance" but that is unnecessary to the Court's actual holding that Tri-State properly pleads an independent injury sufficient to bring a direct action—not merely because it is a closely held corporation and Section 7.01(d) applies, but because the injury does not flow through the corporation. *See* ECF No. 25 at 22-23.

### B. The Fiduciary Duty Claim Against SPV Can Proceed.

Defendants implicitly acknowledge that Defendant Grose has a fiduciary duty to Tri-State. Indeed, their only argument as to Grose is that the fiduciary duty claim cannot proceed directly. Given this Court's ruling that the nature of the injury allows the action to proceed directly, rather than derivatively, the only remaining issue is whether Tri-State, a 50% shareholder, has properly pled a claim against SPV, the other 50% shareholder.

Defendants again rely primarily on *Hill v. Ofalt*, 85 A.3d 540 (Pa Super 2014), this time for the proposition that one 50% shareholder in a closely held corporation or limited liability company does not have standing to assert a direct action against another 50% shareholder for breach of fiduciary duties. Defendants argue that the cases relied upon by the Court in its previous order were all decided before *Hill* and that *Hill* changes the outcome of this case. But the Court was aware of *Hill* when it issued its prior ruling, and indeed, cited directly to *Hill*. (*See* ECF No. 25 at 10, 19). Defendants' reliance on *Hill* is misplaced, as *Hill* is distinguishable from the facts at issue here.

The overall issue decided in *Hill* was whether the entire case could proceed directly, or whether it needed to be brought as derivative action, under the law described above. Put simply, the question before the *Hill* court dealt not with whether a duty existed between 50% shareholders, but rather with plaintiff's ability to bring the case as a direct or a derivative action. Thus, the ultimate holding was that the plaintiff did not allege any injury independent of the injury to the corporation, and thus the action could not be brought directly. 85 A.3d at 552. For the reasons discussed above, the case *sub judice* is different because the injury is unique to Tri-State and Jack.

It is true that in its analysis of the fiduciary duty claim, the *Hill* court held that a fiduciary duty claim was not cognizable under the facts of the case. 85 A.3d at 549. In so holding, the court found that plaintiff made "absolutely no argument" as to why defendant owed him a fiduciary duty. *Id.* at 500. Instead, plaintiff cited to two non-binding cases "in a conclusory fashion": *Baron v. Pritzker*, 52 PA. D. & C.4th 14 (PA. Com. Pl. 2001) and *Korman Corp. v. Franklin Town Corp.*, 34 Pa. D. & C.3d 495 (Pa. Com. Pl. 1984). The *Hill* court distinguished those cases in part on the basis that the plaintiff in *Hill* did not allege that defendant attempted to freeze him out of the business. *Id.* at 551. Instead, plaintiff *willingly* turned over the helm of the restaurant to defendant. *Id.* (emphasis in original).

Here, unlike the plaintiff in *Hill*, Tri-State *does* allege that defendants attempted to freeze Tri-State out. *See* ECF. No. 27 at ¶ 48 ("Grose and/or SPV . . . [sought] to sell WES or its assets to third-parties in a manner to deliberately eliminate Tri-State from realizing any financial benefit from its ownership in WES"); *id.* at ¶ 50 ("Grose and/or SPV offered to sell WES . . . and expressed the manifest written intent to exclude Tri-State and Jack from sharing in the profits"); *id.* at ¶ 53 (alleging that Grose and SPV attempted to "expel Tri-State as a Member of WES").

Thus, this case is different than *Hill*, and is more factually similar to *Baron* and *Korman*. The only other two cases Defendants cite to for the proposition that there is no duty between 50% shareholders are also not persuasive. In *Schmechel v. Gaither*, the court cited to *Hill* for the proposition that it "recently refused to recognize fiduciary duties between equal shareholders." 2015 WL 6957061, at *4 (Pa. Super June 24, 2015). But *Hill* is distinguishable for the reasons discussed above, and the *Schmechel* court gave no other reason or analysis for not finding a fiduciary duty.

In *Resh v. Bortner*, the court's statement that "Pennsylvania appellate courts have explicitly rejected the notion that an equal shareholder owes a fiduciary duty to a coequal shareholder" was in the context of a motion to appoint a receiver, which the court stated is a "drastic remedy" that should be used "sparingly, with caution . . . and only in an extreme case under extraordinary circumstances." 2016 WL 4138638, at *2-3 (E.D. Pa. Aug. 3, 2016). The only cases cited by the *Resh* court were *Schmechel* and *Hill*. In a later decision, the *Resh* court explicitly stated that it "need not determine" whether a fiduciary duty was owed on the facts of the case, because the case could only be brought as a derivative case given the nature of the alleged injury. *See Resh v. Bortner*, 2016 WL 6834104, at *4 (E.D. Pa. Nov. 21, 2016).

Defendants cite to no other cases for the proposition that there cannot be a duty between 50% shareholders. Indeed, Defendants acknowledge that there is no Pennsylvania Supreme Court decision on the issue. (ECF No. 29 at 11). Given the factual differences in this case and *Hill*, and the fact that there is no Pennsylvania Supreme Court decision on point, the Court is unwilling to depart from its previous holding that the fiduciary duty claim can proceed against SPV. Indeed, the principles of stare decisis compel the Court to rule consistent with its previous order. *See United States v. Schreiber*, 150 F.R.D. 106, 108 (S.D. Ohio 1993) ("Under the

doctrine of stare decisis, once a court has applied a principle of law to a certain set of facts, it will apply that principle to all future cases involving facts that are substantially the same.").

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss (ECF No. 28).

**IT IS SO ORDERED.**


_____**s/Algenon L. Marbley**_____
**ALGENON L. MARBLEY**
**DATED: March 5, 2018**              **UNITED STATES DISTRICT JUDGE**