IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN JACK and<br>   TRI-STATE DISPOSAL, LLC, | : : : | |
| Plaintiffs, | : : | Case No. 2:16-cv-633 |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| DEAN GROSE and<br>   SOUTH PARK VENTURES, LLC, | : : : : | Magistrate Judge Jolson |
| Defendants. | : | |
| SOUTH PARK VENTURES, LLC | : : | |
| Plaintiff, | : : | Case No. 2:17-cv-808 |
| v. | : : | JUDGE ALGENON L. MARBLEY |
| JOHN JACK, *et al.*, | : : | Magistrate Judge Jolson |
| Defendants. | : | |

**<u>OPINION & ORDER</u>**

This matter is before the Court on the parties' Motions for Summary Judgment in the consolidated cases of Jack v. Grose, *et al.*, 2:16-cv-633, and South Park Ventures, LLC v. Jack, *et al.*, 2:17-cv-808. These motions are fully briefed and ripe for review. For the reasons set forth below, the parties' Motions are **GRANTED IN PART** and **DENIED IN PART**.

1

## I. BACKGROUND

### A. Factual Background

This case is a tale of corporate intrigue fit for the casebooks. This Court has already set out a detailed statement of facts in its second Order on SPV's and Grose's Motion to Dismiss (ECF No. 82), which are reproduced below, with minor variations.

Water Energy Services, LLC ("WES") is a limited liability company that was created to operate Class II injection wells for disposal of wastewater generated by the oil and gas industry in the Appalachian Basin. (ECF No. 27 at ¶¶ 15-16). Fifty-percent (50%) of WES' membership interest is owned by Defendant South Park Ventures, LLC ("SPV"), which is owned in part and controlled by Defendant Dean Grose. (*Id.* at ¶¶ 5, 7). The remaining fifty-percent (50%) of WES' membership interest is owned by Plaintiff Tri-State Disposal, LLC ("Tri-State"). (*Id.* at ¶ 7). Plaintiff John Jack is the manager and a member of Tri-State. (*Id.* at ¶ 1). Horizon Partners, LLC ("Horizon") is also a member of Tri-State. (*Id.* at ¶ 4). Jack is a member of Horizon and holds 50% of its membership interest. (*Id.* at ¶¶ 1, 4). Heinrich Production, LLC ("Heinrich") holds the remaining 50% membership interest in Horizon. (*Id.* at ¶ 4).

WES is a manager-managed limited liability company and has a board with two members—Grose, appointed by SPV, and Jack, appointed by Tri-State. (*Id.* at ¶ 15). Jack also served as the CEO of WES and operated WES day-to-day, along with Noble Zikefoose, the Senior Vice President of Operations, and Terry Clark, the Vice President of Business Development. (*Id.* at ¶ 18). Grose was involved with the management of WES through his position on the board. (*Id.*).

Between 2015 and 2016, WES constructed its facilities and established a customer base, becoming fully operational by early 2016. (*Id.* at ¶¶ 22-24). WES soon experienced cost

overruns in the construction of its wells, however. In 2015, while WES was still completing construction of its injection wells, Cequel Energy Capital Partners, LLC ("Cequel") became interested in purchasing WES. (*Id.* at ¶ 25, Ex. E). Cequel presented WES with a letter of intent, offering to buy the company for an amount in excess of all debts that WES had incurred. (*Id.* at ¶¶ 25, 26, Ex. E). Despite this lucrative offer, SPV and Heinrich declined to pursue it, and instead allowed the letter of intent to expire in early 2016. (*Id.* at ¶ 27).

Jack and Tri-State allege that, following SPV's refusal to pursue the offer, Grose, SPV, and Heinrich engaged in a concerted effort to remove Jack from the board of WES, to remove him as CEO to gain control of WES, and to deprive him of financial compensation to which he is otherwise entitled. (*Id.* at ¶ 28). Jack and Tri-State allege that Heinrich attempted to gain control of Tri-State and Horizon and remove him from those companies as well.[1] (*Id.*).

As a result, management of WES became deadlocked by disagreement and lack of cooperation. (*Id*. at 30). Jack made several efforts to resolve the issues with Heinrich, SPV, and Grose, including offering to sell his interest in Tri-State and Horizon to Heinrich, or offering to buy Heinrich's interest in Horizon, and offering to sell Tri-State's interest in WES to SPV, or offering to buyout SPV. (*Id*. at ¶¶ 32-35, 38). These efforts did not come to fruition, and deadlock continued. Jack alleges that SPV and Grose made false statements about him, including that he misappropriated money from WES, in order to damage his business reputation and force him to leave WES and forgo financial benefits. (*Id.* at ¶¶ 41, 43).

---

[1] Plaintiffs have claims pending against Heinrich in the Washing County Common Pleas Court, Case No. 16 OT 142, which is currently stayed pending arbitration. The arbitration is currently pending before the American Arbitration Association in Case No. 01-16-0003-7711. *See* ECF No. 27 at ¶ 3.

3

Jack and Tri-State further allege that Grose and SPV engaged in a private negotiation with Dolphin Capital Group, LLC to sell WES in excess of $21 million, and stated that the profits would not be shared with Tri-State or Jack. (*Id.* at ¶¶ 49-51, Ex. K). On May 26, 2016, SPV made a formal demand on Jack and Grose, as the board of managers of WES, to remove Jack for breach of fiduciary duties, personal dishonesty, gross mismanagement, and incompetence. (*Id.* at ¶ 44, Ex. J). Then, on June 9, 2016, SPV sent a notice of expulsion to Tri-State, which purported to expel Tri-State from WES altogether. (*Id.* at ¶ 53, Ex. L).

In December of 2016, after the above-captioned lawsuit was filed, the assets of WES were sold to Funds Protection Investments ("FPI"), which is an entity formed and controlled by Heinrich and Grose. (*Id.* at ¶¶ 58-59). FPI then sold the WES assets to Deeprock Disposal Solutions, LLC ("Deeprock"), which is controlled by Heinrich, Grose, and SPV. (*Id.* at ¶ 60). Deeprock terminated Jack's employment with WES, and currently operates the disposal facility that was formerly owned by WES. (*Id.* at ¶ 61).

**B. Procedural Background**

Plaintiffs, John Jack and Tri-State Disposal, LLC, sued Defendants, Dean Grose and South Park Ventures, LLC, in the Washington County (Ohio) Court of Common Pleas on June 3, 2016. Jack and Tri-State alleged five claims: (1) breach of contract (WES Operating Agreement); (2) request for injunctive relief regarding the alleged breach of contract and attempts to expel Jack and/or Tri-State from WES; (3) request for declaratory judgment regarding the efforts to remove Jack as manager and CEO and to expel Tri-State from WES; (4) breach of fiduciary duty for alleged improper conduct and self-dealing; and (5) defamation for allegedly false and defamatory statements about Jack and Tri-State. Grose and SPV removed the case to federal court, invoking this Court's diversity jurisdiction. This Court then dismissed Jack's and Tri-State's claim against

Grose for breach of contract and injunctive relief for the alleged breach and efforts to expel Jack and Tri-State and dismissed Count Three in its entirety. This Court allowed Jack and Tri-State's claim for breach of contract and request for injunctive relief to proceed against SPV and allowed the breach of fiduciary duty claim to proceed. (ECF No. 25).

Plaintiffs then filed a Second Amended Complaint. (ECF No. 27). The Amended Complaint alleged three claims: (1) breach of contract against SPV, (2) breach of fiduciary duties against Grose and SPV, and (3) defamation resulting in libel and slander. Defendants again filed a Motion to Dismiss. This Court ruled on the Motion to Dismiss on March 5, 2018. (ECF No. 82). In that Order, this Court denied Defendants' Motion to Dismiss the fiduciary duty claim.

SPV had also sued Jack and Tri-State in Washington County on June 9, 2016. (2:17-cv-808, ECF No. 1 at 2). SPV's Complaint purported to bring a derivative action on behalf of WES against Jack and WES. On March 3, 2017, SPV amended its complaint and instead sued John Jack, Noble Zickefoose, and Terry Clark in a direct action. Defendants Jack, Clark, and Zickefoose then removed the case to federal court where it was consolidated with Jack's and Tri-State's suit. SPV alleged two claims in their suit against Jack, Zickefoose, and Clark: (1) breach of fiduciary duty; and (2) misrepresentation and fraud. (2:17-cv-808, ECF No. 1-3).

On March 19, 2018, Defendants Grose and SPV answered Jack's and Tri-State's Amended Complaint and counterclaimed for: (1) breach of fiduciary duties by Tri-State and Jack; and (2) breach of contract against Tri-State for breaching the terms of the WES Operating Agreement.[2] (2:16-cv-633, ECF No. 87).

---

[2] Grose and SPV labeled this claim "breach of fiduciary duties," but the claim proceeds to allege that "[t]he WES Operating Agreement is a valid, binding contract" and that Tri-State breached the Agreement. Grose and SPV clarified in their Response to Tri-State's Motion for Summary Judgment that this count should read "breach of contract." (ECF No. 152 at 6). Therefore, this Court will construe this claim as one for breach of contract.

5

SPV and Zickefoose moved to dismiss the complaint against Zickefoose in case 2:17-cv-808 under Federal Rule of Civil Procedure 41. (2:16-cv-633, ECF No. 161). That Motion was granted on March 20, 2019.

Each remaining party filed a Motion for Summary Judgment in the consolidated cases. These motions are ripe for review.

## II. STANDARD OF REVIEW

A motion for summary judgment is governed by the requirements of Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The party seeking summary judgment bears the initial burden of presenting law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party may also satisfy its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party satisfies this initial burden, then the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the

material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position is not enough to survive summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

## III. LAW AND ANALYSIS

### A. Requirements for a Derivative Claim

SPV and Grose ("the Grose Defendants") and Jack and Tri-State ("the Jack Defendants") have both alleged that the other party cannot bring their claims because both parties are seeking to bring derivative, rather than direct, actions. Any derivative action would have to be brought

7

by WES, not the Grose or Jack Defendants. Therefore, this Court will first examine the requirements for a direct action.

As this Court has stated before, generally, "an action for breach of fiduciary duty may only be brought by the corporation directly, or in the alternative, indirectly by a shareholder through a derivative action brought on behalf of the corporation." *In re Bruno*, 553 B.R. 280, 286 (Bankr. W.D. Pa. 2016) (citing Pa. Cons. Stat. § 1717); *Hill v. Ofalt*, 85 A.3d 540 (Pa Super 2014) (describing derivate suits). Shareholders, creditors, and others are generally "prohibited from bringing a direct action against the directors for a breach of their fiduciary duties." *In re Bruno*, 553 B.R. at 286. But "ample authority permits a direct cause of action by one 50% LLC member against another for breach of the company's operating agreement." (ECF No. 25 at 10).

To bring a direct claim, a plaintiff must "allege a direct, personal injury—that is independent of any injury to the corporation" and be entitled to the benefit of any recovery. *Hill*, 85 A.3d at 548. If the allegations in the complaint allege "injury to the corporation, or to the whole body of its stock," then an action is derivative. *Id.* at 549. A direct action may include allegations that a shareholder who was also an officer or employee "was terminated, restricted from access to records, and prevented from selling shares at their true value." *Simms v. Exeter Architectural Products, Inc.*, 868 F.Supp. 677, 682 (M.D. Pa. 1994). When a party asserts damages that resulted from harm to the corporation, such as a tax lien filed against the party because of the corporation's failure to pay its taxes, or attempts to collect on the personal guarantee of a loan on which the corporation defaulted, the harm is derivative. *Id.* at 551–52. Under the Pennsylvania Uniform Limited Liability Company Act of 2016

> [A] member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and protect the member's interests, . . . [so long as the member] plead[s] and prove[s] an actual or

threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.

15 P.A.C.S.A. § 8881.

This Court previously held that Tri-State and Jack properly alleged a direct action for the Grose Defendants' attempt to squeeze out Tri-State and Jack.

On the parties' motions for summary judgment, this Court is now presented with the new claims from the Grose Defendants that Jack and Tri-State breached the WES Operating Agreement and breached their fiduciary duties. The Jack Defendants, and Clark, have defended these allegations in part by arguing that the Grose Plaintiffs are attempting to bring a derivative claim through their request for damages in the amount of slightly more than $2.4 million.

The First Amended Complaint that SPV filed in state court requested $2.4 million in damages. The last numbered paragraph of the First Amended Complaint in that case is telling. SPV concludes its allegations with the claim that "[b]y continuing to manage and operate WES through the receivership, the Jack Defendants were able to effectively diminish and destroy the value of WES as an ongoing concern." (2:17-cv-808, ECF No. 1-3 at 89).

SPV bases its damages on the $2 million loan that SPV made to WES. WES could not pay SPV once WES was put into receivership. As Grose testified in his deposition, the $2.4 million in claimed damages, he believed, was "the note and the interest that was due, plus costs." (2:16-cv-633, ECF No. 110, Exh. 1 at 148: 15–25). When asked just a little later in his deposition, Grose again testified as follows:

> Q. Right. But just by your testimony that $2 million serves the basis of the damages you're seeking, which you said was the $2,484,781; correct?
> A. Correct.
> Q. Including costs and expenses/
> A. Correct.

9

(Id. at 150: 17–20). What SPV seeks is repayment of its promissory note. Like the claims in *Hill*, a claim for repayment of a loan given to the corporation states a derivative, not a direct action.

Moreover, any such claim based on the promissory note is barred by the express terms of the WES Operating Agreement, at least as to Tri-State. Article 6.4 of the Operating Agreement states as follows:

> No Member shall be liable for any debts or losses of capital or profits of the company or be required to guarantee the liabilities of the Company, unless agreed upon in writing by such Member.

WES Operating Agreement Art. 6.4.

The Operating Agreement thus prohibits SPV's claims against Tri-State based on the loss of the $2 million loan.

Therefore, SPV cannot bring claims that allege as damages only the $2.4 million for repayment of the loan. Because SPV's First Amended Complaint in state court allege only $2.4 million in damages, the claims in that complaint fail for lack of standing. The First Amended Complaint brings claims against Jack and Clark for breach of fiduciary duty and for fraud and misrepresentation. Clark's, Jack's, and Tri-State's Motions for Summary Judgment on the fraud and breach of fiduciary duty claims in SPV's First Amended Complaint are therefore **GRANTED.**

Grose's and SPV's counterclaims remain, however. Grose and SPV counterclaimed against Jack and Tri-State Disposal, LLC for breach of fiduciary duty and against Tri-State Disposal, LLC for breach of contract. The counterclaims that SPV and Grose allege claim $2.4 million in damages but also contains a request for "compensating [sic] damages, incidental damages and consequential damages in an amount in excess of $75,000.00." (2:16-cv-633, ECF

No. 8 at 19). Grose and SPV argued in their Response to Jack's Summary Judgment Motion that the $2.4 million "is just one measure of SPV's damages which also include loss of business opportunity, damage to its membership interest in WES, eliminating it from realizing gains from its ownership interest, and preventing SPV from engaging in any type of corporate governance of WES as originally contemplated when WES was formed." (2:16-cv-633, ECF No. 151 at 2). Counsel for SPV and Grose argued at the Summary Judgment hearing that SPV's and Grose's harm was that SPV could not value its shares and therefore could not determine an appropriate value for which to sell its interest. Whether SPV could appropriately determine the value of its shares and whether Jack and Tri-State attempted to freeze out Grose and SPV are direct, not derivative, claims. Thus, those claims will be examined substantively below.

### B. Breach of the WES Operating Agreement

Jack and Tri-State allege that SPV breached the WES Operating Agreement. (ECF No. 27 at 12). As this Court characterized this claim when ruling on Grose's and SPV's Motion to Dismiss the First Amended Complaint, Jack and Tri-State "allege[] that Grose and SPV breached the WES Operating Agreement by, among other acts, seeking Tri-State's expulsion from WES, seeking Jack's removal as Tri-State's appointed manager of WES, and seeking Jack's removal as WES's CEO." (ECF No. 25 at 9). SPV has moved for summary judgment on the breach of contract claim. SPV argues that neither Jack nor Tri-State has put forth any evidence of direct injury. SPV argues that Jack was never forced out of WES, and, in fact, is still a member and the CEO of WES. SPV has also renewed its argument that Jack was not a third-party beneficiary of the Operating Agreement, and, therefore, does not have standing to sue for its breach.

SPV's argument that Jack does not have standing as a third-party beneficiary must fail. As this Court stated in its ruling on SPV's first Motion to Dismiss, Jack was a third-party

beneficiary of the WES Operating Agreement. (ECF No. 25 at 10–13). The next inquiry is whether Jack and Tri-State can meet the elements of breach of contract based on the facts in the record thus far. Breach of contract under Pennsylvania law requires: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002); *see also Omnicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004).

SPV alleges that "Jack remains the CEO and a manager of WES and Tri-State has never relinquished its membership interest in WES." (ECF No. 140 at 12). SPV relies mostly on Jack's own deposition testimony for these assertions. Jack has argued in his Response to Grose and SPV's Motion for Summary Judgment, however, that, through Funds Protection Investments, LLC ("FPI"), Dean Grose "purchase[d] the WES assets out of receivership for the cheapest price possible, formed successor entity DeepRock, transferred the assets to his DeepRock entity which now operates the formerly WES assets and business via DeepRock, all to the exclusion of Tri-State and Jack." (ECF No. 149 at 30–31). Jack further alleges that he was in fact "terminated from his employment position with WES/DeepRock." (ECF No. 149 at 31).

Jack's and Tri-State's argument requires accepting the conclusion that SPV accomplished indirectly what SPV attempted to do directly; that is, to remove Jack and Tri-State from having an interest in the business of WES. While such allegations may present an issue of breach of fiduciary duty, however, they do not present a breach of contract. Jack and Tri-State argue that they cannot show damages yet because experts are needed to conduct valuations and the Court has yet to set expert deadlines. (ECF No. 149 at 29–30). The actual calculation of damages, however, is not required at the summary judgment stage. Jack and Tri-State face the much larger hurdle, however, of showing that SPV's breach caused them harm.

This Court does not doubt that SPV violated the WES Operating Agreement when it served a demand letter on John Jack and Dean Grose asking Jack and Grose to remove Jack as CEO. Article 14.1 of the Operating Agreement states that "[t]he Tri State Manager may only be removed by Tri State, and any vacancy shall be filled by Tri State." (ECF No. 137 Exh. G at 9). And the process for expulsion under Section 24 of the Operating Agreement required a majority of membership, which SPV, by virtue of its 50% holding in WES, did not have. But Jack, and Tri-State were never officially expelled from WES. True, DeepRock now owns WES's assets, but the WES Operating Agreement applies to an interest in WES, not the injection wells that WES once owned. In ruling that Jack and Tri-State have not shown a breach of contract for Grose's and SPV's attempts to remove Jack, this Court passes no judgment on other ways that Jack and Tri-State could have attempted to show breach of contract. For example, the Operating Agreement states that the managers and officers of WES owed WES and its members the fiduciary duties that all corporate officers owe to their companies. But neither Jack nor Tri-State appears to have alleged such a direct connection between a breach of fiduciary duty and a breach of contract. Therefore, Grose's and SPV's Motion for Summary Judgment on Jack's and Tri-State's breach of contract claim is **GRANTED.**

Grose and SPV have also alleged that Tri-State breached the WES Operating Agreement. (ECF No. 87 at ¶¶102–06). Grose and SPV have not alleged any specific facts in their counterclaim showing how Tri-State itself breached the Operating Agreement. Tri-State has defended against these general allegations by arguing that Grose and SPV do not have standing to bring this breach of contract claim against Tri-State because they have not been injured independently of WES so as to maintain a direct action. Grose and SPV clarified in their Response to Tri-State that their claim for breach of contract relies on four Articles of the

Operating Agreement. First, Article 9 requires that WES's books and records were to be kept at SPV's address (and the address of WES's principal office). But, SPV and Grose allege that "Tri-State took control of the WES books and records in violation of the Operating Agreement." (ECF No. 152 at 7). Second, Article 12 of the Operating Agreement requires that WES's accounts be kept in the bank account that the Board designated. SPV and Grose allege that Tri-State violated this provision "when it opened the WesBanco Bank account without the authorization or knowledge of SPV and its Board member, Grose." (*Id.*). Third, Article 14 of the Operating Agreement provides that the WES Board will manage WES. SPV and Grose allege that "Tri-State breached this provision when Tri-State usurped all of SPV's and Grose's management duties and Jack directed Grose to refrain from telling anyone that he was on the WES Board or part of WES." (*Id.*). Lastly, SPV and Grose allege that Tri-State violated Article 23 of the Operating Agreement by not instituting deadlock procedures and instead suing SPV.

Neither party has shown the absence of a genuine dispute of material fact on Tri-State's alleged breach of the Operating Agreement. This is partially due to the conclusory manner in which SPV and Grose pleaded their counterclaims. Their counterclaim for breach of contract against Tri-State did not specify which particular allegations they believed supported the breach of contract claim. Therefore, Tri-State was unable properly to respond with any facts in its favor. But Tri-State has not moved to dismiss the counterclaims and "*sua sponte* dismissals on the merits are disfavored in this circuit" and "are permitted in cases where the parties have had ample notice of the court's intent to dismiss, or have had opportunity to address the issues raised by the dismissal." *Tri-Med Finance Co. v. National Century Financial Enterprises, Inc.*, 2000 WL 282445 (6th Cir. 2000). Therefore, this Court is bound to adjudicate the matter on a motion for summary judgment. Under Federal Rule of Civil Procedure 56(c)(3), this "[C]ourt need

14

consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Tri-State argues that SPV and Grose have not alleged any action distinct to Tri-State as opposed to Jack, but as SPV and Grose point out, Tri-State could only act through Jack. SPV and Grose have cited some deposition testimony, albeit the record evidence they have pointed this Court to is thin. In addition to Grose's deposition testimony, Albrecht appears to have testified in his deposition that John Jack told him not to pay some invoices, to delete some financial information from WES's accounting system, and that Comtech was not involved in WES's accounting around the time that WES changed accounting systems. (ECF No. 156, Albrecht Dep., 26:1–32:5, 34:1–35:25). This is not enough to show no genuine issue of material fact in either direction. Therefore, Tri-State's Motion for Summary Judgment on SPV's and Grose's breach of contract counterclaim is **DENIED.**

### C. Breach of Fiduciary Duty Claims

Jack and Tri-State allege that Grose and SPV breached their fiduciary duties. Grose and SPV have also alleged that Tri-State and Jack breached their fiduciary duties to Grose and SPV. Both parties now move for summary judgment. The facts on these claims are highly disputed. Both Jack/Tri-State and Grose/SPV allege that the other party attempted to freeze them out of management and usurp control of WES for their own benefit. This Court finds that there is a genuine dispute of material fact on both claims. Therefore, Jack's and Tri-State's Motions for Summary Judgment as to the fiduciary duty claims and Grose's and SPV's Motion for Summary Judgment as to the fiduciary duty claims are **DENIED.**

The WES Operating Agreement spells out the parties' fiduciary duties in Article 14.1, which provides as follows:

> "the Mangers and the officers of the Company, in the performance of their duties as such, shall owe to the Company and its Members the fiduciary duties

15

(including the duties of loyalty and due care) of the type owed under law by directors and officers of a business corporation incorporated under the laws of the Commonwealth of Pennsylvania."

To state a claim for breach of fiduciary duty, "a plaintiff must first establish that a fiduciary or confidential relationship existed between [plaintiff] and the defendants." *Fox Int'l Relations v. Fiserv Secs., Inc.*, 490 F. Supp. 2d 590, 615 (E.D. Pa. 2007) (quotation omitted). In addition to alleging a fiduciary relationship, a plaintiff must also plead: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all [relevant] matters . . . ; (2) that the plaintiff suffered injury; and (3) that the [defendant's] failure to act solely for the plaintiff's benefit . . . was a real factor bringing about plaintiff's injuries." *See Dinger v. Allfirst Fin., Inc.*, 82 F. App'x 261, 265 (3d Cir. 2003); *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414-15 (E.D. Pa. 2006). Several state and federal courts applying Pennsylvania law have found that an allegation that one shareholder tried to freeze out another can support a claim for breach of fiduciary duty. *See, e.g.*, *Cooper v. Rucci*, No. 07-00036, 2008 WL 942710, at *1-7 (W.D. Pa. 2008) (collecting cases) (holding that Pennsylvania Supreme Court likely would adopt a rule permitting direct actions for breach of fiduciary duty from 50% shareholders who were frozen out or denied corporate opportunities); *Liss v. Liss*, No. 2063, 2002 WL 576510, at *5 (Pa. Com. Pls. Mar. 22, 2002) (finding that a claim that one 50% shareholder "oppressed" and "excluded" other 50% shareholder could proceed as a direct claim).

There is a genuine dispute of material fact on both sides here. Grose and SPV have pointed to evidence that Jack was negotiating with investors to purchase WES and continue the business without Grose and SPV. Jack and Tri-State have put forward evidence of Grose and SPV attempting to cut Jack and Tri-State out of the business. This kind of dispute is

16

fundamentally ill-suited for summary judgment.  Whether either party breached a fiduciary duty to the other and what damages resulted, if any, is a question best evaluated by a jury upon hearing the testimony, seeing the documents, and evaluating the credibility of the witnesses. Therefore, the parties' cross motions for summary judgment on the breach of fiduciary duty claims are **DENIED.**

### D. Jack's and Tri-State's Defamation Claim

Grose and SPV have moved for summary judgment on Jack's and Tri-State's Defamation claim.  At argument, counsel for the Jack and Tri-State represented that they no longer wished to pursue their defamation claim.  Therefore, Grose's and SPV's Motion for Summary Judgment as to the defamation claim is **GRANTED.**

### IV. CONCLUSION

For the foregoing reasons, the parties' motions are **GRANTED IN PART and DENIED IN PART.**  The parties' claims may go forward as follows.

- Tri-State's Motion for Summary Judgment (ECF No. 135) is **DENIED.**
- John Jack's Motion for Summary Judgment (ECF No. 137) is **GRANTED IN PART and DENIED IN PART.**
    - John Jack's Motion for Summary Judgment as to SPV's and Grose's breach of fiduciary counterclaim is **DENIED.**  There is a genuine dispute of material fact as to whether John Jack breached his fiduciary duty.
    - Summary Judgment is **GRANTED** in favor of John Jack on SPV's and Grose's breach of fiduciary duty claim against John Jack as asserted in SPV's and Grose's First Amended Complaint in case 2:17-cv-808.
- Terry Clark's Motion for Summary Judgment (ECF No. 138) is **GRANTED.**
- Dean Grose's and SPV's Motion for Summary Judgment (ECF No. 139) is **GRANTED IN PART and DENIED IN PART.**
    - Grose's and SPV's Motion for Summary Judgment on Jack's and SPV's breach of contract claim is **GRANTED.**
    - Grose's and SPV's Motion for Summary Judgment on Jack's claim for defamation is **GRANTED** as Jack and Tri-State have represented that they do not wish to pursue the claim.
    - Grose's and SPV's Motion for Summary Judgment on Jack's and SPV's breach of fiduciary duty claim is **DENIED** as there remains a genuine dispute of material fact.

**IT IS SO ORDERED.**

                                        **s/Algenon L. Marbley**
                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED: March 25, 2019**